UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
JANNEY MONTGOMERY SCOTT LLC,                          :
                                                      :
                          Plaintiff,                  :
                                                      :
           -against-                                  :   Civil Action No.: *10 cv 4248 (LAk)*
                                                      :
FRANK GREENBERG, KAREL                                :
GREENBERG, MARK LICHTER, and                          :
KATHERINE LICHTER,                                    :
                                                      :
                          Defendants.                 :
------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR A PRELIMINARY INJUNCTION

Lani A. Adler (LAA-8166)
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Tel.:  (212) 536-3900
Fax:   (212) 536-3901
lani.adler@klgates.com

*Counsel for Plaintiff Janney Montgomery Scott
LLC*

May 26, 2010

## TABLE OF CONTENTS

**Page**

I.   Preliminary Statement ............................................................................................. 1

II.  Procedural History.................................................................................................. 2

III. Defendants' Amended Statement Of Claim Fails To Set Forth Any Facts Establishing
     That Their Claims Against Janney Are Arbitrable. ............................................. 4

IV.  Janney Satisfies The Applicable Legal Standards .............................................. 5

     A.   The Question of Arbitrability Is For The Court To Decide, Not The Arbitrators. ......5

     B.   Janney Has Established The Elements Required For Obtaining A Preliminary
          Injunction. .............................................................................................................6

          1.   Janney Will Suffer Irreparable Harm If Defendants Are Not
               Preliminarily Enjoined From Proceeding With The Arbitration. ................6

          2.   Janney Is Likely To Succeed On The Merits....................................................7

               a.   There Is No Arbitration Agreement Between Janney And Any Of
                    Defendants ...........................................................................................7

               b.   Defendants Are Not Janney's "Customers" For Purposes Of
                    FINRA Rule 12200. ............................................................................8

V.   Conclusion ............................................................................................................. 11

# TABLE OF AUTHORITIES

## Cases

*Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003 ................................................. 6, 10, 11

*Brookstreet Securities Corp. v. Bristol Air, Inc.,* No. C 02-0863 SI, 2002 U.S. Dist.
LEXIS 16784 (N.D. Cal. Aug. 5, 2002) .................................................................. 13 n. 4

*Charles Schwab & Co., Inc. v. Reaves*, No. CV-09-2590-PHX-MHM, 2010 WL 447370,
(D. Ariz. Feb. 4, 2010) .................................................................................................. 13 n. 4

*County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) ............................................. 7

*Gibson v. U.S. Immigration & Naturalization Service*, 541 F. Supp. 131, 137
(S.D.N.Y. 1982) .................................................................................................................9

*Interactive Brokers, LLC v. Duran*, No. 08-CV-6813, 2009 WL 393827 (N.D. Ill. Feb.
17, 2009) .......................................................................................................... 13 n. 4

*John Hancock Life Insurance v. Wilson*, 254 F.3d 48 (2d Cir. 2001) ............................................. 6

*Malak v. Bear Stearns & Co., Inc.*, No. 02 CV 9195 RCC, 2004 WL 213014 (S.D.N.Y.
Feb. 4, 2004) .................................................................................................................. 12

*Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979
(2d Cir. 1997).................................................................................................. 6, 7, 8, 10

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003) ............................... 8

*NXIVM Corp. v. Ross Institute.*, 364 F.3d 471 (2d Cir. 2004)....................................................... 7

*Proshares Trust v. Schnall*, No. 09 Civ. 6386(SHS), 2010 WL 565441 (S.D.N.Y. Feb. 18,
2010) ........................................................................................................................ 8, 10, 11

*UBS Securities. LLC v. Voegeli*, 684 F. Supp. 2d 351 (S.D.N.Y. 2010) ............................ 8, 11, 12

## Federal Rules

Federal Rule of Civil Procedure 65 .................................................................................. 1

Federal Rule of Evidence 201 .......................................................................................... 3

Plaintiff Janney Montgomery Scott LLC ("Janney"), pursuant to Federal Rule of Civil Procedure 65, submits this memorandum of law in support of its motion for an order preliminarily enjoining Defendants Frank Greenberg, Karel Greenberg, Mark Lichter, and Katherine Lichter ("Defendants") from pursuing their claims against Janney in an arbitration before the Financial Industry Regulatory Authority ("FINRA"), entitled *Frank Greenberg and Karel Greenberg, Mark Lichter and Katherine Lichter v. Wachovia Securities, LLC, Wachovia Securities Financial Network, LLC, Morgan Keegan & Co., Inc., Janney Montgomery Scott, LLC, Robert William Eddy, and Robert D. Gooch, III* (FINRA Case No. 10-00256) (the "FINRA Arbitration").

## I.    PRELIMINARY STATEMENT

Defendants have no right to arbitrate their claims against Janney.  In the FINRA Arbitration, Defendants claim to be victims of a fraudulent securities scheme perpetrated by a third party, Derivium Capital LLC ("Derivium").  According to Defendants, the extent of Janney's alleged participation in Derivium's fraudulent scheme was to provide a brokerage account to Derivium, which Derivium used to handle transfers and sales of Defendants' securities.  In fact, Janney has no connection whatsoever to any of the Defendants.  Despite this lack of connection, Defendants purport to bring several claims against Janney in arbitration, including fraud, aiding and abetting fraud, and federal securities law violations.

However, there is no arbitration agreement, let alone any agreement, between Janney and any of Defendants that can serve as a basis for arbitration.  The only potential basis for arbitration would be FINRA Rule 12200, which mandates FINRA members such as Janney to arbitrate disputes that are between a "customer" and a FINRA member.  Nevertheless, this rule is unavailing to Defendants because none of them is a "customer" of Janney for purposes of that rule, or otherwise.

Because Defendants can articulate no basis for arbitration, Janney has a high likelihood of success on the merits of its claim that Defendants have no standing to compel Janney to arbitrate their claims. In addition, it is well established in the Second Circuit that a party suffers immediate and irreparable harm as a matter of law if it is forced to arbitrate claims that are not arbitrable.[1] As such, Janney has satisfied the elements for injunctive relief, and the Court should grant its motion for a preliminary injunction.

## II.   PROCEDURAL HISTORY

On or about March 18, 2010, Defendants filed their Amended Statement of Claim with FINRA, instituting the FINRA Arbitration against Janney, along with Wachovia Securities, LLC and Wachovia Securities Financial Network, LLC ("Wachovia"), Morgan Keegan & Co., Inc. ("Morgan Keegan"), Robert William Eddy (an employee of Wachovia), and Robert D. Gooch, III (an employee of Morgan Keegan). A true and correct copy of the Amended Statement of Claim, along with its exhibits, is attached as Exhibit A to the accompanying Declaration of Lani A. Adler, dated May 26, 2010 ("Adler Decl.").[2]

Janney has until May 26, 2010 to respond to the Amended Statement of Claim. However, instead of submitting to arbitration, Janney is informing FINRA that Janney has filed the present action for declaratory and injunctive relief and motion for preliminary injunction.

Its timing suggests that the initiation if the FINRA Arbitration was an attempt by Defendants to forum shop in response to the recent dismissal with prejudice by the United States District Court for the Central District of California of an action entitled *Kurt Sollberger v. Wachovia Securities, LLC et al.*, No. SACV09-0766 (ANx) (C.D. Cal.) (the "California

---

[1] New York law is applicable here because Defendants brought the FINRA Arbitration in New York, and FINRA selected New York, New York as the location for the proceedings in the FINRA Arbitration.

[2] Defendants had previously filed a Statement of Claim but amended it prior to service; hence, the Amended Statement of Claim is deemed the only statement of claim in this case.

Litigation"), brought by counsel for Defendants in this action, on behalf of a plaintiff with substantially identical claims.  Counsel for Defendants, Mark Wilson, was also counsel for Kurt Sollberger, the plaintiff in the California Litigation, who, like Defendants, claimed to be a victim of the same fraudulent scheme perpetrated by Derivium.  Sollberger's claims and factual circumstances in the California Litigation are nearly identical to those of Defendants.  In fact, the language of the Amended Statement of Claim closely tracks the pleadings in the California Litigation. (*Compare* Adler Decl., Exs. B and D *with id.*, Ex. A.)  The California District Court dismissed Sollberger's complaint on February 22, 2010 against Janney (and Wachovia and Morgan Keegan), just weeks prior to Defendants' filing of the Amended Statement of Claim on March 18, 2010 in the FINRA Arbitration Janney seeks to enjoin.  (Adler Decl., Exs. A and C.) Ultimately, on May 24, 2010, the California District Court issued a tentative ruling dismissing Sollberger's first amended complaint with prejudice for failure to state any claim upon which relief could be granted, finding that "Plaintiff's factual allegations do not establish any more than [Janney] being [a] passive financial institution[] that [was] used by the actual wrongdoers to store and transfer money." (Adler Decl., Ex. E, p. 6.)  Apparently, Defendants' counsel decided to bring Defendants' claims before FINRA in response to the California District Court's adverse ruling – a classic example of forum shopping and an inappropriate attempt to avoid preclusion arguments. (*See generally* Adler Decl., Exs. B through E.)[3]

In light of this procedural history, Defendants' apparently desperate resort to arbitration is highly suspect.

---

[3] Pursuant to Federal Rule of Evidence 201, Janney respectfully requests the Court to take judicial notice of these filings in the California Litigation.

III.    **DEFENDANTS' AMENDED STATEMENT OF CLAIM FAILS TO SET FORTH ANY FACTS ESTABLISHING THAT THEIR CLAIMS AGAINST JANNEY ARE ARBITRABLE**

The dispute underlying the FINRA Arbitration concerns Janney only tangentially. Quite simply, nothing in the factual allegations set forth in the Amended Statement of Claim gives rise to an obligation on Janney's part to arbitrate Defendants' claims.

Defendants' claims arise from a fraudulent scheme allegedly perpetrated by Derivium, a completely distinct entity from Janney. Derivium marketed a "90% Stock Loan Program" to prospective borrowers, including Defendants. (Adler Decl., Ex. A, pp. 2 – 3.) Under the 90% Stock Loan Program, Derivium solicited Defendants to pledge their publicly-traded stock to Derivium as collateral for a non-recourse loan in the amount of 90% of the stock's value. (*Id.* at p. 3.) Derivium represented to Defendants that it would employ a proprietary hedging strategy to allow it to loan 90% of the stock's value to Defendants and still be able to return the collateral to Defendants at the end of the loan term. (*Id.*)

Accordingly, Defendants entered into a series of twenty-six loans with Derivium under the 90% Stock Loan Program. (*Id.* at p. 5.) Unbeknownst to Defendants, upon receipt of their collateral, Derivium immediately sold the collateral, and the loan and hedging strategy was a sham. (*Id.* at pp. 25 – 27.)

Of those twenty-six loans, Janney was purportedly involved in only six loans. (*Id.* at pp. 40 – 54.) For each of those six loans, all that Janney is alleged to have done was to provide Derivium with a brokerage account, which Derivium utilized to handle the transfers and sales of Defendants' collateral. (*Id.*) Indeed, Defendants had no direct interaction with Janney for any of the six loans; rather, Defendants transferred their collateral to Derivium's account at another broker, Morgan Keegan, which in turn would transfer the collateral to Derivium's account at Janney, which would sell the collateral and transfer the proceeds to Morgan Keegan. (*Id.* at 39). Defendants do not allege that they ever:

- 4 -

- entered into any agreement, including any customer agreement or arbitration agreement, with Janney;

- were Janney's customers;

- opened or maintained any accounts at Janney;

- communicated with Janney;

- met anyone from Janney;

- received any advice or recommendations from Janney;

- engaged in business transactions with Janney;

- acquired their collateral for the 90% Stock Loan Program from Janney;

- transferred their collateral directly to Janney in connection with the 90% Stock Loan Program; or

- had any direct relationship with Janney.

(*See generally* Adler Decl., Ex. A.)  In fact, Janney has conducted a search of its records and has verified that Defendants have not entered into any agreement with Janney and did not open or maintain any accounts at Janney.   (Declaration of Tamaqua Roland dated May 25, 2010 ("Roland Decl.") ¶¶ 5 – 9.)  Accordingly, Defendants cannot show any basis, whether grounded in contract or under the FINRA rules, to compel Janney to arbitrate their claims in the FINRA Arbitration.

## IV.    JANNEY SATISFIES THE APPLICABLE LEGAL STANDARDS

### A.    The Question of Arbitrability Is For The Court To Decide, Not The Arbitrators

As a preliminary matter, the question of arbitrability is properly before this Court, as "[t]he case law is clear … that '[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.' " *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing *John Hancock Life Ins. v. Wilson*, 254 F.3d 48, 53 (2d Cir. 2001); *see Maryland Cas. Co. v. Realty Advisory Bd.*

*on Labor Relations*, 107 F.3d 979, 982 (2d Cir. 1997) ("the question of arbitrability ... is undeniably an issue for judicial determination").   Janney and Defendants have made no agreement regarding arbitrability, let alone any agreement (Roland Decl. ¶ 8), and therefore the Court should determine whether Defendants' claims are arbitrable.

**B.    Janney Has Established The Elements Required For Obtaining A Preliminary Injunction**

In deciding whether Defendants' claims are arbitrable, the Court simultaneously will be determining whether Janney has satisfied one of the elements for a preliminary injunction – a likelihood of success on the merits of its case.   In the Second Circuit, a party seeking a preliminary injunction must show, by a preponderance of the evidence, the following: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (citing *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004).   As discussed in further detail below, Janney has established both elements of irreparable harm and a likelihood of success on the merits that Defendants' claims are not arbitrable.   Therefore, the Court should enjoin Defendants from proceeding with the FINRA Arbitration.

**1.    *Janney Will Suffer Irreparable Harm If Defendants Are Not Preliminarily Enjoined From Proceeding With The Arbitration***

The first prong for injunctive relief is easily met.   Absent a preliminary injunction enjoining the FINRA Arbitration, Janney will be irreparably harmed as a matter of law.   The Second Circuit has held that a party *per se* suffers irreparable harm if "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)

(citing *Maryland Cas. Co., supra*); *Proshares Trust v. Schnall*, No. 09 Civ. 6386(SHS), 2010 WL 565441, at *3 (S.D.N.Y. Feb. 18, 2010) (enjoining FINRA arbitration, finding that investment companies would suffer irreparable harm if compelled to arbitrate because "a party cannot be required to submit to arbitration any dispute which it has not agreed to arbitrate").

In addition to being forced to expend time and resources, Janney would also "lose its right to have [D]efendants' claims adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction it has not consented." *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) (enjoining FINRA arbitration, finding that underwriter would suffer irreparable harm because "there would be no adequate remedy at law if [underwriter] is forced to arbitrate defendants' claim in the FINRA proceeding"). Accordingly, Janney has established the element of irreparable harm for purposes of injunctive relief.

### 2.    *Janney Is Likely To Succeed On The Merits*

In addition to demonstrating irreparable harm, Janney satisfies the next element for a preliminary injunction – likelihood of success on the merits. Regarding this element, "[i]t is necessary only that the court find that the plaintiff has presented a strong prima facie case to justify the discretionary issuance of preliminary relief." *Gibson v. U.S. Immigration & Naturalization Serv.*, 541 F. Supp. 131, 137 (S.D.N.Y. 1982). Janney has a strong prima facie case that there is no basis upon which Defendants may rely to compel Janney to arbitration. First, there is no arbitration agreement, or any agreement at all, between Janney and any of Defendants. Second, FINRA Rule 12200, the only other possible grounds for arbitration, is unavailing to Defendants, as they are not "customers" for purposes of that rule. As such, Janney is highly likely to succeed on the merits, and the Court should enjoin Defendants from pursuing their claims in the FINRA Arbitration.

### a.    There Is No Arbitration Agreement Between Janney And Any Of Defendants

The Amended Statement of Claim does not, and cannot, allege that Janney entered into an arbitration agreement, or any agreement at all, with any of Defendants. (*See* Adler Decl., Ex. A). Moreover, the Roland Declaration submitted herewith establishes that Janney's books do not reflect that any of Defendants ever had an agreement or account with Janney. (*See* Roland Decl. ¶¶ 8 – 9.) Without any such contract, Janney cannot be forced to arbitrate Defendants' claims. *See Maryland Cas. Co.*, 107 F.3d at 982 (stating the fundamental principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit").

### b. Defendants Are Not Janney's "Customers" For Purposes Of FINRA Rule 12200

As discussed above, there is no written agreement requiring arbitration. The only other conceivable grounds for arbitration would be FINRA Rule 12200. However, that rule does not help Defendants either, as none of Defendants is a "customer" for purposes of that rule. Specifically, FINRA Rule 12200 provides that FINRA members, such as Janney, must arbitrate as follows:

> Parties must arbitrate a dispute under the Code if:
>
> • Arbitration under the Code is either:
>
>> (1) Required by a written agreement, or
>>
>> (2) Requested by the *customer*;
>
> • The dispute is between a *customer* and a member or associated person of a member; and
>
> • The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200 (emphasis added).

The term "customer" is defined broadly by FINRA Rule 12100(i), and excludes only "a broker or dealer." FINRA Rule 12100(i). It is not unlimited, however, and "the Second Circuit

has recognized limits on the scope of this definition." *Proshares Trust*, 2010 WL 565441 at *2 (citing to *Bensadoun*, 316 F.3d at 178).  Indeed, at least one court in the Second Circuit has explicitly rejected the notion that a party need only not be a broker or dealer in order to qualify as a "customer" because "Such an interpretation ... would be absurd." *UBS Sec. LLC*, 684 F. Supp. 2d at 356.

As an example of how the Second Circuit has narrowed the scope of the term "customer," the court in *Bensadoun* explained that "where investors pool their funds and relinquish all investment authority to a third party who deals with a[] [FINRA] broker, that third-party, not the investors, will normally be the broker's customer." *Bensadoun*, 316 F.3d at 178.  That framework is analogous here.  Defendants (like the investors in *Bensadoun*) pledged their securities as collateral to a third party, Derivium, which happened to be a customer of a FINRA broker, Janney.  In doing so, Defendants relinquished sole control over the collateral to Derivium, allowing Derivium to exercise its proprietary hedging strategy with respect to the collateral.  Thus, under the reasoning of *Bensadoun*, Defendants are not Janney's customers and cannot compel Janney to arbitrate.

Other cases in the Second Circuit lead to the same conclusion that Defendants are not "customers" for purposes of FINRA Rule 12200.  In *Proshares Trust*, the court enjoined the investors' FINRA arbitration because the investors failed to demonstrate that they were customers of any of the brokers.  *Proshares Trust*, 2010 WL 565441 at *3.  Specifically, the investors "never ... bought shares ... from [the brokers], engaged in any other business transaction with them, had any financial dealings with them, or met with or had any contact at all with them." *Id.* at *1.  Similarly here, Defendants do not allege that they had any sort of interaction or communication with Janney.  (*See* Adler Decl., Ex. A.)

.

In *UBS Sec. LLC*, another Southern District of New York case, the court found that the investors were not "customers" of the underwriter for purposes of FINRA Rule 12200, and, therefore, entered a permanent injunction restraining the investors from prosecuting their claims against the underwriter in the FINRA arbitration. *UBS Sec. LLC*, 684 F. Supp. 2d at 357.  In analyzing FINRA Rule 12200, the court explained that the term "customer" refers to "one involved in a business relationship with a[] [FINRA] member that is related directly to investment or brokerage services." *Id.* at 355 (citation omitted).  The court found no such "business relationship" between the investors and the underwriter. *Id.* at 356.  At most, the investors and the underwriter entered into "lockup agreements" regarding the IPO at issue, but those agreements did not include an arbitration provision, nor did it create a business relationship that was in any way related to the underwriter providing investment or brokerage services. *Id.* Here, there is not even a contract between Janney and Defendants, or anything else, that could give rise to a "business relationship" under which Janney provided brokerage services to Defendants.  In short, the only "business relationship" here regarding brokerage services was between Janney and Derivium.

In another case, *Malak v. Bear Stearns & Co., Inc.*, No. 02 CV 9195 RCC, 2004 WL 213014 (S.D.N.Y. Feb. 4, 2004), the court concluded that the investor was not a "customer" of the securities brokerage firm and therefore could not compel arbitration. *Id.* at *5 (analyzing former NASD Rule 10301(a), the predecessor to FINRA Rule 12201).  In *Malak*, the investor never communicated directly with the broker, nor did he even transfer his money directly to the broker; rather, the investor only dealt directly with the investment company, which was the primary entity perpetrating the fraud. *Id.* at *5.  Those same facts are present here.  Defendants communicated with Derivium, not with Janney, and did not transfer the securities to Janney. (*See* Adler Decl., Ex. A.)  Hence, as the court found in *Malak*, there is "no doubt" that

Defendants are not "customers" for purposes of the FINRA rules. *Malak*, 2004 WL 213014 at *4.[4]

Thus, the relevant case law leaves little doubt that Janney is likely to prevail on its claim that Defendants' claims against Janney are not arbitrable, either under any arbitration agreement or under FINRA Rule 12200. This strong likelihood of success, coupled with the irreparable harm that Janney will necessarily suffer in the absence of an injunction, entitles Janney to injunctive relief.

## V.   CONCLUSION

Janney is entitled to a preliminary injunction enjoining Defendants from pursuing their arbitration claims against Janney in the FINRA Arbitration. Janney is likely to prevail on the merits because the law is clear that Janney has no obligation to arbitrate Defendants' claims – Janney did not agree to arbitrate these claims, and Defendants are not "customers" for purposes of FINRA Rule 12200. Moreover, Janney will suffer irreparable harm as a matter of law if an injunction is not entered. Finally, the Court should not overlook the fact that Defendants' claims

---

[4]      Like the above-described cases from the Second Circuit, case law from other jurisdictions leads to the same conclusion that Defendants cannot invoke FINRA Rule 12200 to compel arbitration of their claims against Janney. *See, e.g., Charles Schwab & Co., Inc. v. Reaves*, No. CV-09-2590-PHX-MHM, 2010 WL 447370, at *5 (D. Ariz. Feb. 4, 2010) (enjoining FINRA arbitration, finding nothing "that would indicate that [the investors] qualify as customers of Schwab by investing with Mrs. Bennett, the holder a personal account at Schwab"); *Interactive Brokers, LLC v. Duran*, No. 08-CV-6813, 2009 WL 393827, at *5 (N.D. Ill. Feb. 17, 2009) (enjoining FINRA arbitration, finding that investors "do not qualify as 'customers' under Rule 12200 by virtue of being 'customers of a customer'"); *Brookstreet Sec. Corp. v. Bristol Air, Inc.*, No. C 02-0863 SI, 2002 U.S. Dist. LEXIS 16784, at *26 (N.D. Cal. Aug. 5, 2002) (enjoining NASD arbitration, finding no support for the notion that "a person who is merely doing business with an account holder of a member firm becomes a 'customer' of the firm itself").

Indeed, *Charles Schwab, Interactive Brokers*, and *Brookstreet* all involved the same facts as those in the instant case – individuals (like Defendants here) attempted to arbitrate claims of fraud, aiding and abetting fraud, negligence, federal securities law violations, *etc.*, against broker-dealers (like Janney here) for the broker-dealers' purported role in a fraudulent scheme perpetuated by a third party (like Derivium here). *See Brookstreet*, 2002 U.S. Dist. LEXIS 16784 at *2 – 3; *Charles Schwab*, 2010 WL 447370 at *1; *Interactive Brokers*, 2009 WL 393827 at * 1. Those attempts to arbitrate failed. Like Janney, the brokers' supposed involvement was simply too tangential to justify finding a "customer" relationship for purposes of FINRA Rule 12200. *See, e.g., Brookstreet*, 2002 U.S. Dist. LEXIS 16784 at *26 (the investors' funds were simply placed into another party's account with the broker). In all three cases, the courts provided the brokers with injunctive relief and enjoined the arbitrations.

are nearly identical to the claims that the California District Court recently dismissed with prejudice in the California Litigation; thus, Defendants' counsel, who had brought the California Litigation, is simply forum shopping and trying to invoke FINRA to force Janney to arbitration and avoid the California Litigation's collateral estoppel and res judicata effects.

Accordingly, Janney respectfully requests the Court to (1) enjoin Defendants from proceeding with their claims against Janney in the FINRA Arbitration; and (2) grant Janney any further relief it deems proper.


Dated:   New York, New York
         May 26, 2010

                                        Respectfully submitted,

                                        K&L GATES LLP

                                        By: _____
                                             Lani A. Adler (LAA-8166)
                                             599 Lexington Avenue
                                             New York, New York 10022
                                             Tel.:  (212) 536-3900
                                             Fax:   (212) 536-3901

                                        *Attorneys for Plaintiff Janney Montgomery
                                        Scott LLC*