UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                   :

JANNEY MONTGOMERY SCOTT LLC,     :

                    Plaintiff,     :

            -against-         :

                          :    Civil Action No. 10-CV-04248 (LAK)

FRANK GREENBERG, KAREL       :
GREENBERG, MARK LICHTER, and    :
KATHERINE LICHTER,         :

                    :

             Defendants.   :
--------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION FOR A TEMPORARY RESTRAINING ORDER

Lani A. Adler (LAA-8166)
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Tel.:  (212) 536-3900
Fax:  (212) 536-3901
lani.adler@klgates.com

*Counsel for Plaintiff Janney Montgomery Scott
LLC*

June 25, 2010

## TABLE OF CONTENTS

I.  Preliminary Statement ................................................................................................... 1

II.  Procedural History:  Notwithstanding Janney's Filings In This Action, The FINRA
     Arbitration Continues To Proceed Against Janney, And Defendants Have Refused
     To Agree To Stay Those Proceedings. ............................................................................. 2

III.  Defendants' Amended Statement Of Claim Fails To Set Forth Any Facts Establishing
      That Their Claims Against Janney Are Arbitrable. .......................................................... 4

IV.  Janney Has Established The Elements For Obtaining A Temporary Restraining Order. ..... 6

     A.  Janney Will Suffer Irreparable Harm If Defendants Are Not Temporarily
         Restrained From Proceeding With The Arbitration. ................................................6

     B.  Janney Is Likely To Succeed On The Merits. ...........................................................7

          1.  There Is No Arbitration Agreement Between Janney And Any Of
              Defendants. ..................................................................................................8

          2.  Defendants Are Not Janney's "Customers" For Purposes Of FINRA Rule
              12200......................................................................................................8

     C.  The Balance of the Equities Weighs in Favor of a Temporary Restraining Order ....12

V.  Conclusion ...................................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Brookstreet Sec. Corp. v. Bristol Air, Inc.*, No. C 02-0863 SI, 2002 U.S. Dist. LEXIS 16784 (N.D. Cal. Aug. 5, 2002)............................................................................ 11

*Charles Schwab & Co., Inc. v. Reaves*, No. CV-09-2590-PHX-MHM, 2010 WL 447370 (D. Ariz. Feb. 4, 2010)....................................................................................... 11

*County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408 (2d Cir. 2008) ........................................... 6

*Gibson v. U.S. Immigration & Naturalization Serv.*, 541 F. Supp. 131 (S.D.N.Y. 1982)............. 7

*Interactive Brokers, LLC v. Duran*, No. 08-CV-6813, 2009 WL 393827 (N.D. Ill. Feb. 17, 2009) ........................................................................................................... 11

*Jackson v. Johnson*, 962 F. Supp. 391 (S.D.N.Y. 1997)...................................................... 6

*Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n*, 965 F.2d 1224 (2d Cir.1992)............................................................................................. 6

*Malak v. Bear Stearns & Co., Inc.*, No. 02 CV 9195 RCC, 2004 WL 213014 (S.D.N.Y. Feb. 4, 2004) .................................................................................................. 10

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003) .......................... 6

*NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir. 2004).................................................... 6

*Proshares Trust v. Schnall*, No. 09 Civ. 6386(SHS), 2010 WL 565441 (S.D.N.Y. Feb. 18, 2010) ...................................................................................................... 6

*UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351 (S.D.N.Y. 2010)........................................... 7

Plaintiff Janney Montgomery Scott LLC ("Janney"), pursuant to Federal Rule of Civil Procedure 65, submits this memorandum of law in support of its motion for a temporary restraining order enjoining Defendants Frank Greenberg, Karel Greenberg, Mark Lichter, and Katherine Lichter ("Defendants") from proceeding with their claims against Janney in the arbitration before the Financial Industry Regulatory Authority ("FINRA"), entitled *Frank Greenberg and Karel Greenberg, Mark Lichter and Katherine Lichter v. Wachovia Securities, LLC, Wachovia Securities Financial Network, LLC, Morgan Keegan & Co., Inc., Janney Montgomery Scott, LLC, Robert William Eddy, and Robert D. Gooch, III* (FINRA Case No. 10-00256) (the "FINRA Arbitration").

## I.   PRELIMINARY STATEMENT

The Court should temporarily restrain Defendants from pursuing their claims against Janney in the FINRA Arbitration until the Court rules upon Janney's Motion for Preliminary Injunction.   This relief has become necessary because subsequent to Janney's filing of its Complaint and Motion for Preliminary Injunction, FINRA notified Janney that, absent an agreement between the parties or an order of the Court, the arbitration proceedings will continue against Janney, even to the point of possibly entering an award against Janney.   By June 28, 2010, Janney has an obligation to choose FINRA arbitrators and provide FINRA with its dates of availability for a pre-hearing conference in August 2010.   Since Defendants have refused to agree to stay the FINRA Arbitration until the Court decides the Motion for Preliminary Injunction, Janney has no choice but to seek a temporary restraining order to protect itself from having to participate in two forums.

Janney easily satisfies the elements for a temporary restraining order.   As an initial matter, Janney is not requesting the Court to enter a temporary restraining order without notice to Defendants; rather, Janney gave Defendants ample notice that it would be filing this motion

unless they agreed to temporarily stay the FINRA Arbitration, which they refused to do. Turning to the standards to be satisfied for issuance of a temporary restraining order, first, Janney has a high likelihood of success on the merits of its claim that Defendants have no right to arbitrate their claims against Janney. There is no arbitration agreement, let alone any agreement, between Janney and any of Defendants that can serve as grounds for arbitration. The only potential basis for arbitration would be FINRA Rule 12200, which mandates FINRA members such as Janney to arbitrate disputes that are between a "customer" and a FINRA member. However, this rule is unavailing to Defendants because none of them is a "customer" of Janney for purposes of that rule, or otherwise. Second, Janney can demonstrate irreparable harm in the absence of a temporary restraining order. It is well established in the Second Circuit that a party suffers immediate and irreparable harm as a matter of law if it is forced to arbitrate claims that are not arbitrable.[1] Third, the balance of equities tips in favor of Janney. Entry of the temporary restraining order will not cause Defendants to suffer any harm or prejudice, whereas unless the temporary restraining order is granted, Janney will either have to adjudicate its claims in two forums and proceed to arbitrate a dispute that it never agreed to arbitrate or risk having an arbitration award entered against it. Plainly, Janney has shown that it is entitled to a temporary restraining order.

II.   **PROCEDURAL HISTORY: NOTWITHSTANDING JANNEY'S FILINGS IN THIS ACTION, THE FINRA ARBITRATION CONTINUES TO PROCEED AGAINST JANNEY, AND DEFENDANTS HAVE REFUSED TO AGREE TO STAY THOSE PROCEEDINGS.**

On or about March 18, 2010, Defendants filed their Amended Statement of Claim with FINRA, instituting the FINRA Arbitration against Janney, along with Wachovia Securities, LLC and Wachovia Securities Financial Network, LLC ("Wachovia"), Morgan Keegan & Co., Inc.

---

[1]     New York law is applicable here because Defendants brought the FINRA Arbitration in New York, and FINRA selected New York, New York as the location for the proceedings in the FINRA Arbitration.

("Morgan Keegan"), Robert William Eddy (an employee of Wachovia), and Robert D. Gooch, III (an employee of Morgan Keegan).[2]   A true and correct copy of the Amended Statement of Claim, along with its exhibits, is attached as Exhibit A to the Declaration of Lani A. Adler, dated May 26, 2010, submitted in support of Janney's Motion for Preliminary Injunction ("5/26/10 Adler Decl.").

On May 26, 2010, to prevent Defendants from going forward with their claims against Janney in the FINRA Arbitration, Janney filed its Complaint for declaratory and injunctive relief along with its Motion for Preliminary Injunction in this Court.   On the same day, Janney provided FINRA with notice of these filings and reserved its right to provide a Statement of Answer in response to the Amended Statement of Claim and otherwise participate in the FINRA Arbitration, should it become necessary to do so depending on the Court's rulings in the instant action.   (*See* accompanying Declaration of Lani A. Adler, dated June 25, 2010 ("6/25/10 Adler Decl."), Ex. A.)

However, on June 7, 2010, despite this notice by Janney, FINRA sent Janney a letter stating: "This case will continue to be processed with or without your Statement of Answer. You should be aware that, notwithstanding your failure to answer, the Panel may render an Award against you." (*Id.*, Ex. B (emphasis in original).)   Janney therefore requested Defendants to stay the FINRA Arbitration with respect to their claims against Janney, pending the Court's ruling on Janney's Motion for Preliminary Injunction. (*Id.*, Ex. C.)   However, Defendants have refused to stay the FINRA proceedings against Janney. (*Id.* at ¶ 4.)

---

[2]      The timing of the FINRA Arbitration suggests that it was an attempt by Defendants to forum shop in response to the recent dismissal with prejudice by the United States District Court for the Central District of California of an action entitled *Kurt Sollberger v. Wachovia Securities, LLC et al.*, No. SACV09-0766 (ANx) (C.D. Cal.) brought by counsel for Defendants in this action, on behalf of a plaintiff with substantially identical claims. Apparently, Defendants' counsel decided to bring Defendants' claims before FINRA in response to the California District Court's adverse ruling – a classic example of forum shopping and an inappropriate attempt to avoid preclusion arguments.   Thus, Defendants' desperate resort to arbitration is highly suspect.

Meanwhile, the FINRA Arbitration has continued to proceed against Janney.  Absent entry of a temporary restraining order, Janney must provide to FINRA, by June 28, 2010, a list of proposed arbitrators and its available dates in August 2010 for an initial pre-hearing conference. (*Id.*, Exs. D, E.)  A temporary restraining order is therefore necessary to suspend the FINRA Arbitration against Janney.

## III.   DEFENDANTS' AMENDED STATEMENT OF CLAIM FAILS TO SET FORTH ANY FACTS ESTABLISHING THAT THEIR CLAIMS AGAINST JANNEY ARE ARBITRABLE.

The dispute underlying the FINRA Arbitration concerns Janney only tangentially. Nothing in the factual allegations set forth in the Amended Statement of Claim gives rise to an obligation on Janney's part to arbitrate Defendants' claims.

Defendants' claims arise from a fraudulent scheme allegedly perpetrated by Derivium Capital LLC ("Derivium"), a completely distinct entity from Janney.  Specifically, Derivium purportedly marketed a "90% Stock Loan Program" to prospective borrowers, including Defendants. (5/26/10 Adler Decl., Ex. A, pp. 2 – 3.)  Under the 90% Stock Loan Program, Derivium solicited Defendants to pledge their publicly-traded stock to Derivium as collateral for a non-recourse loan in the amount of 90% of the stock's value.  (*Id.* at p. 3.)  Derivium represented to Defendants that it would employ a proprietary hedging strategy to allow it to loan 90% of the stock's value to Defendants and still be able to return the collateral to Defendants at the end of the loan term. (*Id.*)  Accordingly, Defendants entered into a series of twenty-six loans with Derivium under the 90% Stock Loan Program.  (*Id.* at p. 5.)  Although Defendants allege they were not aware of it, upon receipt of their collateral, Derivium immediately sold the collateral, and the loan and hedging strategy was a sham. (*Id.* at pp. 25 – 27.)

Of those twenty-six loans, Janney was purportedly involved in only six loans. (*Id.* at pp. 40 – 54.)  For each of those six loans, all that Janney is alleged to have done was to provide Derivium with a brokerage account, which Derivium utilized to handle the transfers and sales of

Defendants' collateral. (*Id.*)  Indeed, Defendants had no direct interaction with Janney for any of the six loans; rather, Defendants transferred their collateral to Derivium's account at another broker, Morgan Keegan, which in turn would transfer the collateral to Derivium's account at Janney, which would sell the collateral and transfer the proceeds to Morgan Keegan.  (*Id.* at 39.)

Tellingly, Defendants do not allege that they ever:

- entered into any agreement, including any customer agreement or arbitration agreement, with Janney;

- were Janney's customers;

- opened or maintained any accounts at Janney;

- communicated with Janney;

- met anyone from Janney;

- received any advice or recommendations from Janney;

- engaged in business transactions with Janney;

- acquired their collateral for the 90% Stock Loan Program from Janney;

- transferred their collateral directly to Janney in connection with the 90% Stock Loan Program; or

- had any direct relationship with Janney.

(*See generally id.*)  In fact, Janney has conducted a search of its records and has verified that Defendants have not entered into any agreement with Janney and did not open or maintain any accounts at Janney.  (Declaration of Tamaqua Roland, dated May 25, 2010, submitted in support of Janney's Motion for Preliminary Injunction ("Roland Decl.") ¶¶ 5 – 9.)  Accordingly, as Defendants cannot show any basis, whether grounded in contract or under the FINRA rules, to compel Janney to arbitrate their claims in the FINRA Arbitration, a temporary restraining order is appropriate.

IV.   **JANNEY HAS ESTABLISHED THE ELEMENTS FOR OBTAINING A TEMPORARY RESTRAINING ORDER.**

The standard for a temporary restraining order is the same as for a preliminary injunction. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir.1992); *Jackson v. Johnson*, 962 F. Supp. 391, 392 (S.D.N.Y. 1997) (citations omitted). Specifically, the standard consists of the following elements: "(1) irreparable harm in the absence of the [temporary restraining order] and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (citing *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004). As discussed in further detail below, Janney has established both elements of irreparable harm and a likelihood of success on the merits that Defendants' claims are not arbitrable. Therefore, the Court should issue a temporary restraining order enjoining Defendants from proceeding with the FINRA Arbitration until the Court rules on Janney's Motion for Preliminary Injunction.

A.   **Janney Will Suffer Irreparable Harm If Defendants Are Not Temporarily Restrained From Proceeding With The Arbitration.**

The first prong for a temporary restraining order is easily met. Absent a temporary restraining order enjoining the FINRA Arbitration, Janney will be irreparably harmed as a matter of law. The Second Circuit has held that a party *per se* suffers irreparable harm if "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (citing *Maryland Cas. Co., supra*); *Proshares Trust v. Schnall*, No. 09 Civ. 6386(SHS), 2010 WL 565441, at *3 (S.D.N.Y. Feb. 18, 2010) (enjoining FINRA arbitration, finding that investment companies would suffer irreparable harm if compelled to arbitrate

because "a party cannot be required to submit to arbitration any dispute which it has not agreed to arbitrate"). FINRA has already invoiced Janney for a pre-hearing processing fee. (6/25/10 Adler Decl., Ex. F.) In the absence of a temporary restraining order, Janney will have to expend more time and resources participating in the FINRA Arbitration or otherwise be prejudiced . Thus, if Janney does not abide by the June 28, 2010 deadline to strike and rank proposed arbitrators, it will be deemed to have accepted all the proposed arbitrators. (*Id.*, Ex. D.)

Being forced to expend time and resources is not the only irreparable harm. Janney would also "lose its right to have [D]efendants' claims adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction it has not consented." *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) (enjoining FINRA arbitration, finding that underwriter would suffer irreparable harm because "there would be no adequate remedy at law if [underwriter] is forced to arbitrate defendants' claim in the FINRA proceeding"). Accordingly, Janney has established the element of irreparable harm.

**B.       Janney Is Likely To Succeed On The Merits.**

In addition to demonstrating irreparable harm, Janney satisfies the next element for a temporary restraining order – likelihood of success on the merits. Regarding this element, "[i]t is necessary only that the court find that the plaintiff has presented a strong prima facie case to justify the discretionary issuance of preliminary relief." *Gibson v. U.S. Immigration & Naturalization Serv.*, 541 F. Supp. 131, 137 (S.D.N.Y. 1982). Janney has a strong prima facie case that there is no basis upon which Defendants may rely to compel Janney to arbitration. First, there is no arbitration agreement, or any agreement at all, between Janney and any of Defendants. Second, FINRA Rule 12200, the only other possible grounds for arbitration, is unavailing to Defendants, as they are not "customers" for purposes of that rule. As such, Janney

is highly likely to succeed on the merits, and the Court should temporarily restrain Defendants from pursuing their claims in the FINRA Arbitration.

### 1. There Is No Arbitration Agreement Between Janney And Any Of Defendants.

The Amended Statement of Claim does not, and cannot, allege that Janney entered into an arbitration agreement, or any agreement at all, with any of Defendants.  (*See generally* 5/26/10 Adler Decl., Ex. A).  Moreover, Janney's books do not reflect that any of Defendants ever had an agreement or account with Janney.  (Roland Decl. ¶¶ 8 – 9.)  In fact, prior to filing this motion, Janney requested Defendants to provide it with any agreement that supposedly obligates Janney to arbitrate Defendants' claims.  Not surprisingly, Defendants did not provide any such agreement to Janney.  Without any such contract, Janney cannot be forced to arbitrate Defendants' claims.  *See Maryland Cas. Co.*, 107 F.3d at 982 (stating the fundamental principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit").

### 2. Defendants Are Not Janney's "Customers" For Purposes Of FINRA Rule 12200.

As discussed above, there is no written agreement requiring arbitration.  The only other conceivable grounds for arbitration would be FINRA Rule 12200.  However, that rule does not help Defendants either, as none of Defendants is a "customer" for purposes of that rule. Specifically, FINRA Rule 12200 provides that FINRA members, such as Janney, must arbitrate as follows:

> Parties must arbitrate a dispute under the Code if:
>
> • Arbitration under the Code is either:
>
>> (1) Required by a written agreement, or
>>
>> (2) Requested by the *customer*;

> • The dispute is between a *customer* and a member or associated person of a member; and
>
> • The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200 (emphasis added).

The term "customer" is defined broadly by FINRA Rule 12100(i), and excludes only "a broker or dealer." FINRA Rule 12100(i). It is not unlimited, however, and "the Second Circuit has recognized limits on the scope of this definition." *Proshares Trust*, 2010 WL 565441 at *2 (citing to *Bensadoun*, 316 F.3d at 178). Indeed, at least one court in the Second Circuit has explicitly rejected the notion that a party need only not be a broker or dealer in order to qualify as a "customer" because "[s]uch an interpretation ... would be absurd." *UBS Sec. LLC*, 684 F. Supp. 2d at 356.

As an example of how the Second Circuit has narrowed the scope of the term "customer," the court in *Bensadoun* explained that "where investors pool their funds and relinquish all investment authority to a third party who deals with a[] [FINRA] broker, that third-party, not the investors, will normally be the broker's customer." *Bensadoun*, 316 F.3d at 178. That framework is analogous here. Defendants (like the investors in *Bensadoun*) pledged their securities as collateral to a third party, Derivium, which happened to be a customer of a FINRA broker, Janney. In doing so, Defendants relinquished sole control over the collateral to Derivium, allowing Derivium to exercise its proprietary hedging strategy with respect to the collateral. Thus, under the reasoning of *Bensadoun*, Defendants are not Janney's customers and cannot compel Janney to arbitrate.

Other cases in the Second Circuit lead to the same conclusion that Defendants are not "customers" for purposes of FINRA Rule 12200. In *Proshares Trust*, the court enjoined the investors' FINRA arbitration because the investors failed to demonstrate that they were

customers of any of the brokers. *Proshares Trust*, 2010 WL 565441 at *3. Specifically, the investors "never ... bought shares ... from [the brokers], engaged in any other business transaction with them, had any financial dealings with them, or met with or had any contact at all with them." *Id*. at *1. Similarly here, Defendants do not allege that they had any sort of interaction or communication with Janney. (*See* 5/26/10 Adler Decl., Ex. A.)

In *UBS Sec. LLC*, another Southern District of New York case, the court found that the investors were not "customers" of the underwriter for purposes of FINRA Rule 12200, and, therefore, entered a permanent injunction restraining the investors from prosecuting their claims against the underwriter in the FINRA arbitration. *UBS Sec. LLC*, 684 F. Supp. 2d at 357. In analyzing FINRA Rule 12200, the court explained that the term "customer" refers to "one involved in a business relationship with a[] [FINRA] member that is related directly to investment or brokerage services." *Id*. at 355 (citation omitted). The court found no such "business relationship" between the investors and the underwriter. *Id*. at 356. At most, the investors and the underwriter entered into "lockup agreements" regarding the IPO at issue, but those agreements did not include an arbitration provision, nor did it create a business relationship that was in any way related to the underwriter providing investment or brokerage services. *Id*. Here, there is not even a contract between Janney and Defendants, or anything else, that could give rise to a "business relationship" under which Janney provided brokerage services to Defendants. In short, the only "business relationship" here regarding brokerage services was between Janney and Derivium.

In another case, *Malak v. Bear Stearns & Co., Inc.*, No. 02 CV 9195 RCC, 2004 WL 213014 (S.D.N.Y. Feb. 4, 2004), the court concluded that the investor was not a "customer" of the securities brokerage firm and therefore could not compel arbitration. *Id*. at *5 (analyzing former NASD Rule 10301(a), the predecessor to FINRA Rule 12201). In *Malak*, the investor

never communicated directly with the broker, nor did he even transfer his money directly to the broker; rather, the investor only dealt directly with the investment company, which was the primary entity perpetrating the fraud. *Id.* at *5. Those same facts are present here. Defendants communicated with Derivium, not with Janney, and did not transfer the securities to Janney. (*See generally* 5/26/10, Adler Decl., Ex. A.) Hence, as the court found in *Malak*, there is "no doubt" that Defendants are not "customers" for purposes of the FINRA rules. *Malak*, 2004 WL 213014 at *4.[3]

Thus, the relevant case law leaves little doubt that Janney will likely succeed in demonstrating that Defendants' claims against Janney are not arbitrable, either under any arbitration agreement or under FINRA Rule 12200. This strong likelihood of success, coupled with the irreparable harm that Janney will necessarily suffer in the absence of relief, entitles Janney to a temporary restraining order.

---

[3]     Like the above-described cases from the Second Circuit, case law from other jurisdictions leads to the same conclusion that Defendants cannot invoke FINRA Rule 12200 to compel arbitration of their claims against Janney. *See, e.g., Charles Schwab & Co., Inc. v. Reaves*, No. CV-09-2590-PHX-MHM, 2010 WL 447370, at *5 (D. Ariz. Feb. 4, 2010) (enjoining FINRA arbitration, finding nothing "that would indicate that [the investors] qualify as customers of Schwab by investing with Mrs. Bennett, the holder a personal account at Schwab"); *Interactive Brokers, LLC v. Duran*, No. 08-CV-6813, 2009 WL 393827, at *5 (N.D. Ill. Feb. 17, 2009) (enjoining FINRA arbitration, finding that investors "do not qualify as 'customers' under Rule 12200 by virtue of being 'customers of a customer'"); *Brookstreet Sec. Corp. v. Bristol Air, Inc.*, No. C 02-0863 SI, 2002 U.S. Dist. LEXIS 16784, at *26 (N.D. Cal. Aug. 5, 2002) (enjoining NASD arbitration, finding no support for the notion that "a person who is merely doing business with an account holder of a member firm becomes a 'customer' of the firm itself").

Indeed, *Charles Schwab*, *Interactive Brokers*, and *Brookstreet* all involved the same facts as those in the instant case – individuals (like Defendants here) attempted to arbitrate claims of fraud, aiding and abetting fraud, negligence, federal securities law violations, *etc.*, against broker-dealers (like Janney here) for the broker-dealers' purported role in a fraudulent scheme perpetuated by a third party (like Derivium here). *See Brookstreet*, 2002 U.S. Dist. LEXIS 16784 at *2 – 3; *Charles Schwab*, 2010 WL 447370 at *1; *Interactive Brokers*, 2009 WL 393827 at * 1.  Those attempts to arbitrate failed.  Like Janney, the brokers' supposed involvement was simply too tangential to justify finding a "customer" relationship for purposes of FINRA Rule 12200. *See, e.g., Brookstreet*, 2002 U.S. Dist. LEXIS 16784 at *26 (the investors' funds were simply placed into another party's account with the broker).  In all three cases, the courts provided the brokers with injunctive relief and enjoined the arbitrations.

**C.** **The Balance of the Equities Weighs in Favor of a Temporary Restraining Order**

Further, Janney is likely to suffer harm in the absence of a temporary restraining order, while Defendants are not likely to suffer any harm if the Court enjoins the FINRA Arbitration. In the absence of a temporary restraining order, Janney will be required to participate in the FINRA Arbitration in order to avoid a negative impact. Indeed, certain deadlines (including the June 28, 2010 deadline for objecting to members of the FINRA arbitration panel and to provide available dates for a pre-hearing conference in August 2010) are imminent. (6/25/10 Adler Decl., Exs. D, E.)   Janney will be forced to participate in that process in order to prevent any prejudice in the event the Court later determines that arbitration was appropriate.  If the Court subsequently grants Janney's Motion for Preliminary Injunction, both Janney and Defendants will have expended time and effort in an inappropriate forum.

If the FINRA Arbitration is stayed only as to Janney, however, Defendants may still proceed against the other respondents in that matter.  If the Court ultimately grants Janney's Motion for Preliminary Injunction, Defendants' claims can be raised in this Court by way of counterclaim.  Even if the Court ultimately denies Janney's Motion for Preliminary Injunction, Defendants will only have had their claims delayed for a relatively brief period.

Accordingly, Janny will suffer substantial harm if its for a temporary restraining order is denied.   If a tro is not issued, Janney will be forced to arbitrate, although no arbitration agreement is in place. Further, unless a tro is issued, Janney will be required to expend the time and effort necessary to prevent any prejudice to its position I the FINRA Arbitration.  On the other hand, the potential harm to Defendants by granting a temporary restraining order is minimal, if any at all; at most, the arbitration claims against Janney would be delayed for a relatively brief period.

## V.   CONCLUSION

Janney is entitled to a temporary restraining order enjoining Defendants from pursuing their arbitration claims against Janney in the FINRA Arbitration, pending the Court's ruling on Janney's Motion for Preliminary Injunction.  Janney is likely to prevail on the merits because the law is clear that Janney has no obligation to arbitrate Defendants' claims – Janney did not agree to arbitrate these claims, and Defendants are not "customers" for purposes of FINRA Rule 12200.   Moreover, Janney will suffer irreparable harm as a matter of law if a temporary restraining order is not entered.  Finally, a comparison of the equities  establishes that Janney will be profoundly harmed  if it is forced to arbitrate pending the Court's determination of the Motion for Preliminary Injunction.   In stark comparison Defendants, who will proceed in the FINRA Arbitration   against the other five parties against whom they asserted claims in that proceeding, cannot specify any harm that would be imposed on them as a result of  the brief delay, if any at all, in the adjudication of their claims against Janney if a temporary restraining order is issued pending this Court's determination of the preliminary injunction motion.   For these, and all of the foregoing reasons, the Court should enter a temporary restraining order enjoining Defendants from proceeding to arbitrate their claims against Janney in the FINRA Arbitration pending  the Court's  ruling on Janney's Motion for Preliminary Injunction.

Dated:   New York, New York
            June 25, 2010

                                        K&L GATES LLP

                                        By: _____
                                             Lani A. Adler (LAA-8166)
                                             599 Lexington Avenue

New York, New York 10022
Tel.:  (212) 536-3900
Fax:   (212) 536-3901
lani.adler@klgates.com

*Attorneys for Plaintiff Janney Montgomery
Scott LLC*